## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PEONY FINE CLOTHING, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1650-WBV-MBN** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **SECTION: D (5)** |

### ORDER AND REASONS

Before the Court is State Farm's Motion to Dismiss.[1]  Plaintiff opposes the Motion,[2] and State Farm has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED without prejudice.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case involves a claim for insurance coverage for business losses resulting from the government-mandated business closures caused by the COVID-19 global pandemic.[4]  Peony Fine Clothing, LLC ("Peony") alleges that it entered into a contract with State Farm Fire and Casualty Company ("State Farm") for insurance coverage of its retail location at 2240 Magazine Street, Suite 102 in New Orleans, Louisiana, which was effective June 4, 2015.[5]  Peony asserts that the policy was in full force and effect as of March 10, 2020, when it reported losses sustained at its insured premises as a result of ceasing its operations in response to the stay-at-home mandate issued

---

[1] R. Doc. 19.
[2] R. Doc. 27.
[3] R. Doc. 30.
[4] *See*, R. Doc. 1-2.
[5] *Id*. at ¶¶ 7-11.

by local political leaders in response to the deadly effects of the global COVID-19 pandemic.[6]

Peony's insurance policy includes a Businessowners Coverage Form[7] and several endorsements, including "CMP-4705.2 Loss of Income and Extra Expense."[8] The "Loss of Income and Extra Expense" endorsement provides coverage for lost income caused by the necessary suspension of operations during a "period of restoration," which is when the suspension is caused by "accidental direct physical loss to the property at the described premises."[9] The policy further provides that the loss must be caused by a "Covered Cause of Loss."[10]

Peony claims that it made a timely demand on State Farm for losses under the "Loss of Income and Extra Expense" endorsement because it "was forced to suspend its operations during a period of restoration lasting from March 1, 2020 through May 16, 2020, due to an accidental direct physical loss to property."[11] Peony asserts that, "The executive orders resulting in the closure of Plaintiff's retail operations were issued to prevent the spread of a highly contagious pathogen present in the New Orleans area."[12] On April 16, 2020, State Farm denied Peony's claim, asserting that there was no coverage for loss of income due to business closure caused by the COVID-19 virus.[13]

---

[6] *Id.* at ¶¶ 8 & 11-13.
[7] R. Doc. 19-3 at pp. 18-57.
[8] *Id.* at pp. 72-75.
[9] *Id.* at pp. 72-75.
[10] *Id.*
[11] R. Doc. 1-2 at ¶¶ 15-16.
[12] *Id.* at ¶ 17.
[13] *Id.* at ¶ 26.

On or about April 16, 2021, Peony filed a Petition for Business Interruption Insurance, Bad Faith Penalties, Attorneys' Fees, and Declaratory Judgment against State Farm, seeking insurance proceeds, damages, and attorney's fees based upon State Farm's denial of coverage, as well as a declaratory judgment that, "the policy of insurance extends coverage from direct physical loss and/or from a civil authority shutdown due to a global pandemic virus."[14]  State Farm removed the case to this Court on August 30, 2021, asserting that the Court has diversity jurisdiction over Peony's claims under 28 U.S.C. § 1332.[15]

On September 27, 2021, State Farm filed the instant Motion, seeking the dismissal of Peony's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[16] State Farm asserts that Peony's claims fail as a matter of law because they are excluded by a provision in the insurance policy barring coverage for "any loss which would not have occurred in the absence of . . . Virus" (the "Virus Exclusion"), and because Peony has failed to allege sufficient facts to establish an "accidental direct physical loss to" the property.[17]  Relying extensively on jurisprudence from both within and outside the Fifth Circuit, State Farm argues that courts have repeatedly held that restrictions imposed by government orders and COVID-19 contamination of the insured premises do not cause the direct physical loss to property required to trigger coverage, and that Peony's alleged business losses amount only to economic

---

[14] *Id.* at ¶ 30.
[15] R. Doc. 1.
[16] R. Doc. 19.
[17] R. Doc. 19 at pp. 1 & 3; R. Doc. 19-1 at pp. 1, 4-5, & 7-19.

losses unrelated to accidental direct physical loss.[18]  State Farm also argues that several federal courts, including this one, have concluded that State Farm's Virus Exclusion, or one similar thereto, is unambiguous.[19]  State Farm further asserts that the "Loss of Income and Extra Expense" endorsement does not apply because coverage is only available where there has been an accidental direct physical loss to property.[20]  State Farm likewise contends that the civil authority provision contained in the "Loss of Income and Extra Expense" endorsement is inapplicable because it provides coverage for loss of income caused where damage to other property caused by a covered risk causes a civil authority to prohibit access to the insured property, which Peony has not alleged.[21]  State Farm further asserts that other policy exclusions bar Peony's claims, including the "Ordinance or Law," the "Acts or Decisions," and the "Consequential Loss" exclusions.[22]

Peony concedes that coverage under the policy is triggered by an accidental direct physical loss to the covered property, but argues that it has properly alleged physical loss or damage to its insured premises "because the expected presence of COVID-19 directly caused Plaintiff to lose the use of its insured premises."[23]  Peony asserts that courts have determined that various types of contamination or the physical presence of substances, even at the microscopic level, can constitute physical loss or damage if it leads to the loss of use of the building.[24]  According to Peony, "That

---

[18] R. Doc. 19-1 at pp. 1-5 & 12-19.
[19] *Id*. at pp. 7-12.
[20] *Id*. at pp. 19-20.
[21] *Id*. at pp. 20-24.
[22] *Id*. at pp. 24-25 (*citing* R. Doc. 19-3 at pp. 23, 24, & 26).
[23] R. Doc. 27 at p. 9.
[24] *Id*. (citing authority).

is exactly what occurred here, for the executive orders resulting in closure of Peony's retail operations were issued to prevent the spread of a highly contagious pathogen present in the New Orleans area."[25]  Peony points out that State Farm's policy uses the term "physical loss" rather than "physical damage," and that Louisiana courts have acknowledged that physical damage to property is not required to sustain a loss.[26]  Peony further asserts that the term "accidental direct physical loss" in the "Loss of Income and Extra Expense" endorsement form is not defined and, as such, is ambiguous such that the plain and ordinary meaning of "loss" should be used in determining whether accidental direct physical loss has occurred.[27]  Peony then seems to assert that its claim has facial plausibility because the Court can draw the reasonable inference that the forced shutdown of its retail premises due to the expected presence of COVID-19 constitutes a "direct physical loss."[28]

Peony further asserts that the Virus Exclusion is inapplicable to the "Loss of Income and Extra Expense" endorsement because the endorsement sets forth its own definitions and exclusions applicable to loss of income and extra expense coverage claims, and does not reference or cross-reference the Virus Exclusion.[29]  Peony contends that if State Farm intended for the Virus Exclusion to apply to loss of income and extra expense claims, "it knew how to make that intention manifest."[30]  Peony claims that, at the very least, an ambiguity exists regarding whether State Farm's

---

[25] *Id.*

[26] *Id.* at pp. 9-10 (citing *Mangerchine v. Reaves*, 2010-1052 (La. App. 1 Cir. 3/25/11), 63 So.3d 1049, 1056).

[27] R. Doc. 27 at p. 10.

[28] *Id.* at p. 11.

[29] *Id.*

[30] *Id.*

Virus Exclusion is applicable, such that the "Loss of Income and Extra Expense" endorsement should be reasonably interpreted to provide coverage.[31]  Because State Farm has the burden of proving the Virus Exclusion applies and the "Loss of Income and Extra Expense" endorsement does not exclude losses caused by viruses, Peony argues that its claim remains facially plausible under Fed. R. Civ. P. 12(b)(6).[32]

In response, State Farm points out that Peony fails to address recent authority from Louisiana state and federal courts that have held that COVID-19 business interruption claims are not viable as a matter of law, and that Peony ignores the decisions that did so based on the same policy language at issue in this case.[33]  State Farm then reiterates the arguments made in its Motion, namely that coverage for Peony's alleged losses is barred by the Virus Exclusion and because Peony has failed to establish the requisite accidental direct physical loss to property that is required for coverage.[34]

## II.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[35]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[31] *Id.*
[32] *Id.* at p. 12.
[33] R. Doc. 30 at p. 1 (citing authority).
[34] *Id.* at pp. 2-10.
[35] Fed. R. Civ. P. 12(b)(6).

on its face.'"[36]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[38]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[39]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. [40] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[41]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[42]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[43]

---

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[37] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

[38] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

[39] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[40] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[41] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[42] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[43] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

## III.   ANALYSIS

### A. The Insurance Policy is Governed by Louisiana law.

As an initial matter, the Court finds that, in determining whether to grant State Farm's Motion, the Court can consider matters outside of the pleadings, including the insurance policy at issue, because it was attached as an exhibit to State Farm's Motion,[44] it was referenced in Peony's Petition,[45] and it is central to Peony's claims against State Farm.[46]

The Court further finds that, because State Farm has invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332, this Court must apply the substantive law of the forum state, Louisiana.[47]   On this point, the parties agree.[48]   "Under Louisiana law, an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[49]   The Louisiana Civil Code, in turn, "provides that the judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract by construing words and phrases using their plain, ordinary and generally prevailing meaning."[50]   The Fifth Circuit has recognized that, "An insurer, like other individuals, is entitled to limit its liability and may alter

---

[44] R. Doc. 19-3.

[45] R. Doc. 1-2.

[46] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[47] R. Doc. 1 at Introductory Paragraph and ¶ 2; *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

[48] *See*, R. Doc. 19-1 at pp. 6-7; R. Doc. 27 at pp. 6-7.

[49] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So.2d 577, 580)) (internal quotation marks omitted).

[50] *Wisznia Co., Inc. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448-49 (5th Cir. 2014) (quoting *Mayo v. State Farm. Mut. Auto. Ins. Co.*, 2003-1801, p.3 (La. 2/25/04), 869 So.2d 96, 99) (internal quotation marks omitted).

coverage under its policy through an endorsement as long as the alteration does not conflict with statutory law or public policy."[51]  Additionally, "Should an insurer and insured attach an endorsement to the policy, the endorsement becomes part of the contract, and the two must be construed together."[52]  However, if a provision of the endorsement conflicts with a provision in the policy, the endorsement supersedes the policy.[53]

**B. Peony Has Failed To Allege an Accidental Direct Physical Loss.**

Peony's claim for business interruption insurance coverage in this case rests solely upon the "Loss of Income and Extra Expense" endorsement contained in its insurance policy with State Farm.[54]  That endorsement provides, in pertinent part, the following:

> The coverage provided by this endorsement is subject to the provisions of **SECTION I — PROPERTY**, except as provided below.
>
> **COVERAGES**
> **1. Loss Of Income**
>     **a**. We will pay for the actual "Loss Of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by accidental direct physical loss to property at the described premises.  The loss must be caused by a Covered Cause Of Loss.
>
>     . . . .
>
> **2. Extra Expense**
>     **a**. We will pay necessary "Extra Expense" you incur during the

---

[51] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 605 (5th Cir. 2018) (quoting *Zeitoun v. Orleans Par. Sch. Bd.*, 2009-1130, p.4 (La. App. 4 Cir. 3/3/10), 33 So.3d 361, 365) (internal quotation marks omitted).

[52] *Bennett*, 890 F.3d at 605 (quoting *Zeitoun*, 2009-1130 at p. 4, 33 So.3d at 365).  S*ee also, Mattingly v. Sportsline, Inc.*, 98-230, p.7 (La. App. 5 Cir. 10/28/98), 720 So.2d 1227, 1230.

[53] *Bennett*, 890 F.3d at 605 (quoting *Zeitoun*, 2009-1130 at p. 4, 33 So.3d at 365) (internal quotation marks omitted).

[54] R. Doc. 1-2 at ¶¶ 15-21.

> "period of restoration" that you would not have incurred if there
> had been no accidental direct physical loss to property at the
> described premises.  The loss must be caused by a Covered Cause
> Of Loss.[55]

The Court agrees with State Farm that Peony has failed to meet the threshold

requirement of showing that its losses were caused by an "accidental direct physical

loss" to its premises, as required under the policy.  Peony's allegations that

government stay-at-home orders and the "expected presence of COVID-19" on its

premises caused "accidental direct physical loss" to its premises fails as a matter of

law because Peony fails to connect them to any tangible alteration or change to its

premises.  Instead, Peony asserts that COVID-19 should be treated like a

contamination, such as lead, gasoline, or asbestos, which other courts have held can

result in the physical loss or damage to property.[56]  Peony cites only one Louisiana

case in support of its position, *Widder v. Louisiana Citizens Prop. Ins. Co.*, wherein a

Louisiana appellate court concluded that the insured had established a direct

physical loss to his home from the contamination of lead that "rendered the home

unusable and uninhabitable."[57]  The cases cited by *Peony*, however, are clearly

distinguishable from the facts of this case, as Peony has failed to show that the

presence of COVID-19 rendered its premises uninhabitable or required remediation

beyond cleaning.

More importantly, however, the Fifth Circuit recently issued two opinions in

which it concluded that the phrase "direct physical loss to property" requires a

---

[55] R. Doc. 19-3 at pp. 72-73.
[56] R. Doc. 27 at p. 9, n.34 (citing authority).
[57] 2011-0196 (La. App. 4 Cir. 8/10/11), 82 So.3d 294.

tangible alteration or deprivation of property, and that losses due to the suspension of business operations during the COVID-19 pandemic are not the result of a physical loss or physical deprivation of property.[58] In *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, the owners of two barbecue restaurants sought to recoup losses caused by a Texas statewide mandate that shuttered their in-dining restaurants by seeking coverage under the business income and extra expense coverage provision in their commercial insurance policies.[59] The insurer denied coverage, and the restaurant owners subsequently filed suit to recover their lost revenue under the policy. After removal to federal court, the Western District of Texas granted the insurer's motion for judgment on the pleadings and concluded that there was no coverage under the business income and extra expense coverage provision because a "physical loss" requires a "distinct, demonstrable, physical alteration of the property."[60] Although the plaintiffs had not alleged that the COVID-19 virus was ever present at either of their restaurants, the district court concluded that even if the virus was present, "it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant."[61] The

---

[58] *See, Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455-458 (5th Cir. 2022) (involving the suspension of dine-in services at restaurants); *Aggie Investments, LLC v. Continental Cas. Co.*, Case No. 21-40382, 2022 WL 257439 (5th Cir. Jan. 26, 2022) (involving the suspension of operations of nonessential businesses, including plaintiff's tea and spice gift shop).

[59] 22 F.4th at 452-53.

[60] *Id.* at 453-54.

[61] *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 907 (W.D. Tex. 2021) (citing *Promotional Headwear, Int'l v. Cincinnati Ins. Co.,* 504 F. Supp. 3d 1191, 1202-04 (D. Kan. 2020); *Uncork and Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 883-84 (S.D. W. Va. 2020)).

district court concluded that the plaintiffs failed to allege any facts showing that COVID-19 caused physical loss, harm, alteration, or structural degradation to their property.[62]

The Fifth Circuit affirmed the district court's ruling, finding that the suspension of dine-in services did not qualify as a direct physical loss of property under the business income and extra expense coverage provision.[63]  Although the phrase "direct physical loss of property" was not defined in the policy, the Fifth Circuit considered the plain meaning of "physical loss," as well as the interpretation of similar language in different policies by Texas courts, and concluded that the plaintiffs' claim was not covered by the business income and extra expense provision because they had "failed to allege any tangible alteration or deprivation of [their] property."[64]  The Fifth Circuit further explained that, "Nothing physical or tangible happened to TBB's restaurants at all.  In fact, TBB had ownership of, access to, and ability to use all physical parts of its restaurants at all times.  And importantly, the prohibition on dine-in services did nothing to physically deprive TBB of any property at its restaurants."[65]  The Fifth Circuit found support for this conclusion in the policy provision itself, which provides coverage only for a "period of restoration," defined in the policy as the time needed to repair, rebuild, or replace the lost or damaged property or the period necessary to resume operations at a different location.[66]  The

---

[62] *Terry Black's*, 514 F. Supp. 3d at 907 (citations omitted).
[63] 22 F.4th at 455.
[64] *Id*. at 455-56.
[65] *Id*. at 456.
[66] *Id*.

Fifth Circuit found that, "This period necessarily contemplates a tangible alteration to the property that requires repair, rebuilding, or replacement. The prohibition on dine-in services does not require TBB to repair, rebuild, or replace any property in its restaurants."[67]

The Fifth Circuit joined several other jurisdictions, including the Second, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, in interpreting "physical loss of property" as requiring a tangible alteration or deprivation of property.[68] This definition has been applied by numerous courts within the Fifth Circuit, including this Court, in evaluating similar claims, and such courts have universally found that COVID-19 and stay-at-home mandates did not constitute "direct physical loss."[69] Further, multiple courts within the Fifth Circuit have

---

[67] *Id.*

[68] *Id.* at 456-57 (citing authority).

[69] *See, Southern Orthopaedic Specialists LLC v. State Farm Fire and Cas. Co.*, Civ. A. No. 21-0861-WBV-DID, 2022 WL 219056 (E.D. La. Jan. 25, 2022) (finding that plaintiff failed to show its losses from the suspension of operations at a medical practice due to the COVID-19 pandemic were caused by a direct physical loss to the covered property); *Muriel's New Orleans, LLC v. State Farm Fire and Cas. Co.,* 535 F. Supp. 3d 556 (E.D. La. 2021) (finding that restaurant that ceased operations due to COVID-19 failed to allege any physical loss that manifested as a demonstrable physical alteration of the premises); *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F.Supp.3d 574 (E.D. La. 2021) (finding that lost profits incurred by men's clothing store owners by government-mandated business closures during COVID-19 pandemic did not amount to "direct physical loss or damages" because there was no physical alteration of the property); *Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, Civ. A. No. 21-648, 2021 WL 2476867 (E.D. La. June 17, 2021) (following *Q Clothier* in requiring distinct, demonstrable, physical alterations); *Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*, Civ. A. No. 21-858, 2021 WL 5415846 (E.D. La. Nov. 19, 2021) (holding that "direct physical loss or damage" requires a "distinct, demonstrable, physical alteration of the property" or "actual physical change or injury to the property," which plaintiff failed to allege because "COVID damages people, not property"); *Coleman E. Adler & Sons, LLC v. Axis Surplus Insurance Co.*, Civ. A. No. 21-00648, 2021 WL 2476867 (E.D. La. June 17, 2021) (finding that "closures mandated by civil authorities due to the COVID-19 pandemic did not cause direct physical loss or damage because their injury is purely economic in nature"); *Padgett v. Transp. Ins. Co.*, Civ. A. No. 6:21-CV-01086, 2021 WL 2559597 (W.D. La. June 1, 2021), *report and recommendation adopted*, 2021 WL 2555377 (W.D. La. June 22, 2021) (finding that the presence of the COVID-19 virus does not constitute physical loss or damage sufficient to trigger coverage for closure of a medical practice due to stay-at-home orders); *Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins. Co.*, Civ. A. No. 21-00317, 2021 WL 1740466 (W.D. La. May 3, 2021) (finding no ambiguity in the requirement that the premises suffer a physical loss or damage

rejected the same arguments raised by Peony in this case, concluding that the presence of the COVID-19 virus in a building did not cause or equate to physical damage or loss sufficient to trigger coverage.[70]   Peony fails to address this jurisprudence in its Opposition brief, or offer any new argument compelling the Court to depart from this precedent.

Finally, in construing the term "accidental direct physical loss," the Court must take care not to render other provisions of Peony's insurance contract superfluous or absurd.[71]   Peony's suggestion that "direct physical loss" to property should essentially encompass loss of use of the property potentially renders part of the policy superfluous.  The Court returns to the Fifth Circuit's recent decision in *Terry Black's Barbecue, LLC*, wherein the court addressed the distinction between the loss of property and the loss of use of the property, cautioning the plaintiffs in that case not to read into the insurance policy words that are not there.[72]   As the Fifth Circuit explained, the physical loss of property "cannot mean something as broad as the 'loss

---

for there to be coverage); *Laser & Surgery Ctr. of Acadiana LLC v. Ohio Cas. Ins. Co.*, Civ. A. No. 21-01236, 2021 WL 2702123 (W.D. La. June 14, 2021), *report and recommendation adopted,* 2021 WL 2697990 (W.D. La. June 30, 2021) (dismissing claims of optometrist group because the presence of the COVID-19 virus does not constitute physical loss or damage sufficient to trigger coverage); *Pierre v. Transp. Ins. Co.*, Civ. A. No. 20-01660, 2021 WL 1709380 (W.D. La. Apr. 29, 2021) (dismissing claims of dentist and dental office because plaintiffs failed to allege that any insured property suffered physical damage as a result of the COVID-19 pandemic); *Diesel Barbershop, LLC v. State Farm Lloyds*, Civ. A. No. 20-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (finding that COVID-19 does not produce a direct physical loss to property like "a noxious odor that makes a business uninhabitable," so plaintiffs failed to plead "a direct physical loss" to property to trigger coverage).

[70] *Southern Orthopaedic Specialists*, Civ. A. No. 21-0861-WBV-DID, 2022 WL 219056 at *9 (citing *Diesel Barbershop*, 479 F. Supp. 3d at 360; *Pierre*, Civ. A. No. 20-01660, 2021 WL 1709380 at *3); *Padgett*, Civ. A. No. 6:21-CV-01086, 2021 WL 2559597 at *3 (citing *Lafayette Bone & Joint Clinic, Inc.*, Civ. A. No. 21-00317, 2021 WL 1740466 at *3; *Diesel Barbershop, supra*; *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 907 (W.D. Tex. 2021); *Pierre, supra*).

[71] La. Civ. Code Ann. art. 2046.

[72] *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 457-58 (5th Cir. 2022).

of use of property for its intended purpose.'  None of these words fall within the plain meaning of physical, loss, or property. . . . 'Physical loss of property' is not synonymous with 'loss of use of property' for its intended purpose."[73]  This Court agrees with that succinct analysis and has not found that any provision in Peony's insurance policy would be rendered superfluous by our interpretation of the phrase "direct physical loss to property."

Based on the foregoing analysis, the Court finds that Peony has failed to allege a direct physical loss to its premises caused by the COVID-19 pandemic or government stay-at-home orders.

### C. The Virus Exclusion Bars Coverage.

Even if the Court had found that the language in Peony's insurance policy was ambiguous and/or that Peony had properly alleged an accidental direct physical loss to its premises, the Court finds that the Virus Exclusion bars Peony's claims.  In its Motion, State Farm contends that the Virus Exclusion bars coverage for Peony's losses because Peony has alleged that COVID-19 was the direct and immediate cause of those losses.[74]  State Farm asserts that under the plain language of the policy, there is no coverage for "any loss which would not have occurred in the absence of  . . . Virus."[75]  Peony asserts that the Virus Exclusion is inapplicable because it is not referenced or cross-referenced in the "Loss of Income and Extra Expense" endorsement, which contains its own definitions and exclusions.[76]  Alternatively,

---

[73] *Id.* at 458.
[74] R. Doc. 19 at p. 3.
[75] *Id.* (*quoting* R. Doc. 19-3 at pp. 23-24).
[76] R. Doc. 27 at p. 11.

Peony claims that an ambiguity exists regarding whether the Virus Exclusion applies to the endorsement.[77]

The Court agrees with State Farm that the Virus Exclusion is not ambiguous, nor is there any ambiguity regarding whether the Virus Exclusion applies to the "Loss of Income and Extra Expense" endorsement. The Court finds that the endorsement appears to contemplate and incorporate the exclusions contained elsewhere in the policy, including the Virus Exclusion. The "Loss of Income and Extra Expense" endorsement, upon which Peony's claims are based, provides that, "The coverage provided by this endorsement is subject to the provisions of **SECTION I—PROPERTY**, except as provided below."[78] In turn, "**Section I—Property**" provides that the insurer will cover "accidental direct physical loss" to the property "caused by any loss as described under **SECTION I—COVERED CAUSES OF LOSS**."[79] In "**SECTION I—COVERED CAUSES OF LOSS**," the policy specifies that the covered property is insured for "accidental direct physical loss" unless the loss is excluded in "**SECTION I—EXCLUSIONS**."[80] The "**SECTION 1—EXCLUSIONS**" subsection lists several acts and events that are excluded from coverage, including an exclusion for "Fungi, Virus Or Bacteria," which is the Virus Exclusion.[81] Because the "Loss of Income and Extra Expense" endorsement incorporates the exclusions listed

---

[77] *Id*. at pp. 11-12.
[78] R. Doc. 19-3 at p. 72.
[79] *Id*. at p. 21.
[80] *Id*. at p. 22.
[81] *Id*. at pp. 23-24.

in the policy and does not override or preclude them, the Court finds there is no ambiguity or conflict between the endorsement and the policy.

Turning to the Virus Exclusion itself, courts have consistently enforced identically-worded virus exclusion clauses as precluding coverage for business interruptions caused by the COVID-19 pandemic.[82]  The Virus Exclusion precludes coverage for a "Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease."[83]  The Virus Exclusion has only one exception: when the virus results from an accidental direct physical loss caused by fire or lightning.[84]  Courts throughout the Fifth Circuit have held that identical and similar virus exclusion clauses bar recovery for COVID-19 related insurance claims. For instance, in *Muriel's New Orleans, LLC v. State Farm Fire and Casualty Company*, another Section of this Court evaluated an identical State Farm insurance contract and virus exclusion clause and determined that the clause "unambiguously excludes coverage for losses resulting from COVID-19."[85]  According to the judge in that case, "The Centers for Disease Control and Prevention ("CDC") defines COVID-19 as "a new virus . . . 'CO' stands for corona, 'VI' for virus, and 'D' for

---

[82] *See, Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.*, 535 F. Supp. 3d 556 (E.D. La. 2021); *Boulet Rehab. Servs. Inc. v. State Farm Fire & Cas. Co.*, Civ. A. No. 6:21-00642, 2021 WL 4923649 (W.D. La. Oct. 20, 2021), *report and recommendation adopted*, 2021 WL 5234772 (W.D. La. Nov. 9, 2021); *Travel Mach. La. LLC v. State Farm Fire & Cas. Co.*, Civ. A. No. 6:21-0635, 2021 WL 4844401 (W.D. La. Oct. 14, 2021), *report and recommendation adopted sub nom.*, *Travel Machine Louisiana, LLC v. State Farm Fire & Cas. Co.*, 2021 WL 5040355 (W.D. La. Oct. 29, 2021).
[83] R. Doc. 19-3 at p. 24.
[84] *Id.*
[85] 535 F. Supp. 3d 556, 570 (E.D. La. 2021).

disease.  Therefore, COVID-19 falls squarely within the language of the Virus Exclusion."[86]  As such, the virus exclusion provision barred coverage.

Agreeing with the conclusion reached in *Muriel's*, the Western District of Louisiana concluded that an identical virus exclusion clause barred coverage for loss of business income claims resulting from the COVID-19 pandemic in *Boulet Rehabilitation Services Inc. v. State Farm Fire & Casualty Company*.[87]  Our sister court agreed with the *Muriel's* court "regarding the applicability of the Virus Exclusion to Governor Edwards' executive orders.  Such executive orders were necessitated by the COVID-19 pandemic and would not have been enacted absent the viral outbreak."[88]  As such, the court concluded that, "losses attributable to the Governor's executive stay-home orders are excluded based on their causal relation to the COVID-19 virus."[89]  The Western District of Louisiana reached the same conclusion in *Travel Machine La. LLC. v. State Farm Fire & Cas. Co.*, which involved an identical State Farm virus exclusion clause.[90]  There, the district court held that the plain language of the virus exclusion clause precluded the plaintiff's claim for coverage regarding COVID-19 related losses because "the Virus Exclusion unambiguously excludes loss caused by virus."[91]

Finally, in *Q Clothier New Orleans LLC v. Twin City Fire Insurance Company*, another Section of this Court granted the insurer's motion for judgment on the

---

[86] *Id.* at 570 (internal citations omitted).
[87] Civ. A. No. 6:21-CV-00642, 2021 WL 4923649, at *3-4 (W.D. La. Oct. 20, 2021), *report and recommendation adopted,* 2021 WL 5234772 (W.D. La. Nov. 9, 2021).
[88] Civ. A. No. 6:21-CV-00642, 2021 WL 4923649 at *3.
[89] *Id.*
[90] Civ. A. No. 6:21-0635, 2021 WL 4844401 (W.D. La. Oct. 14, 2021).
[91] Civ. A. No. 6:21-0635, 2021 WL 4844401 at *3-4.

pleadings in a case involving identical claims for business profits lost as a result of government-mandated closures from the COVID-19 pandemic.[92]  The plaintiff in that case alleged that it sustained business losses as a result of the statewide COVID-19 lockdown implemented in Louisiana, which restricted the operations of non-essential businesses to minimize the spread of COVID-19.[93]  The judge in that case held that the policy's virus exclusion barred coverage for the plaintiff's claims, as a matter of law, based on precedent from within and outside the Fifth Circuit.[94]

The Court reaches the same conclusion in this case.  A plain reading of the Virus Exclusion reveals that it bars coverage for "any loss which would not have occurred in the absence of  . . . [v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease . . . ."[95]  In its Opposition brief, Peony asserts that its losses were caused by "the executive orders resulting in closure of Peony's retail operations [which] were issued to prevent the spread of a highly contagious pathogen present in the New Orleans area."[96]  Thus, as State Farm aptly points out, Peony has alleged that COVID-19 was the direct and immediate cause of its claimed losses."[97]  Like the cases cited above, the Court finds that the Virus Exclusion in Peony's insurance contract unambiguously excludes coverage for losses resulting from the COVID-19 pandemic.

---

[92] 535 F. Supp. 3d 574 (E.D. La. 2021).
[93] *Id.* at 577-78.
[94] *Id.* at 583-87.
[95] R. Doc. 15.
[96] R. Doc. 27 at p. 9.
[97] R. Doc. 30 at p. 5.

### D.  Leave to Amend.

Peony's Opposition brief does not contain a request for leave to amend its Petition in the event that the Court finds its allegations are insufficient to state a plausible claim.  The Court, nonetheless, finds that granting leave is appropriate in this case under Fed. R. Civ. P. 15.  This Court will "freely give leave [to amend] when justice so requires,"[98] but leave to amend "is by no means automatic."[99]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[100]  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[101]

Applying those factors here, the Court finds that any amendment would likely be futile in light of recent authority from the Fifth Circuit confirming that business losses caused by the COVID-19 pandemic are not covered by insurance policies similar to the one at issue in this case.  The Fifth Circuit has even gone so far as to declare that, "We perceive no set of facts in which TBB states a covered claim for its losses due to the suspension of dine-in services during the pandemic.  We conclude amendment would be futile and the district court did not err in denying leave to amend."[102]  Nevertheless, because the Court should grant leave to amend when

---

[98] Fed. R. Civ. P. 15(a).
[99] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[100] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[101] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).
[102] *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 460 (5th Cir. 2022).

justice so requires, the Court will grant Peony leave to file an amended petition to address the deficiencies identified in this Order and Reasons, should it be able to do so in good faith.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that State Farm's Motion to Dismiss[103] is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Peony Fine Clothing, LLC shall have **ten (10) days** from the date of this Order to file a comprehensive, amended petition, without further leave of court, to address the deficiencies identified in this Order.

New Orleans, Louisiana, March 11, 2022.

**WENDY B. VITTER**
**United States District Judge**

---

[103] R. Doc. 19.